In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00336-CV**
_____

**WILLIAM EDGAR COONEY, Appellant**

**V.**

**FIRAS M. ABDEL-RAHMAN, Appellee**

_____

**On Appeal from the 258th District Court**
**Polk County, Texas**
**Trial Cause No. CIV32459**
_____

**MEMORANDUM OPINION**

The Texas Medical Liability Act (TMLA) requires that plaintiffs, in healthcare liability cases, furnish the defendants with a written report from an expert that summarizes the standard of care the plaintiff claims applies and that explains how each of the defendants were negligent in causing the plaintiff's injury.[1] William Edward Cooney provided the defendants with a report from a dentist to address the allegedly negligent conduct of the dentists that Cooney sued. Dr. Nader Kreit, and

_____
[1]Tex. Civ. Prac. & Rem. Code Ann. § 74.351.

1

Dr. Firas M. Abdel-Rahman, by motion, moved to strike Cooney's report, alleging it did not comply with the expert-report requirements of the TMLA.

In motions to strike Cooney's report, Dr. Kreit and Dr. Abdel-Rahman argued that Cooney's initial report and the amended report, which he filed later, failed to explain how each of the defendants were negligent and how each had caused Cooney's injury. Both reports reflect Cooney inhaled a gold crown that fell from a tooth when Cooney was treated at the office where both Dr. Kreit and Dr. Abdel-Rahman work.

The trial court found Cooney's initial report deficient because it is "conclusory and otherwise defective as to both negligence and proximate cause[.]" Even so, the trial court rejected Dr. Kreit's and Dr. Abdel-Rahman's argument that Cooney's expert—Dr. Joe Piazza, DDS—was not qualified to testify as an expert. The trial court also gave Cooney leave to correct the deficiencies the trial court found in Dr. Piazza's initial report. Cooney then amended the report by filing an amended report also authored by Dr. Piazza.[2] The defendants filed a motion to strike that report too, claiming it also failed to identify the standard of care that applied to each of the defendants, failed to explain how each defendant had violated that standard, and failed to explain how each defendant allegedly caused Cooney to inhale the gold

---

[2]*See id*. § 74.351(c) (allowing the trial court to grant one 30-day extension to the plaintiff to cure deficiencies in a non-compliant report).

crown from his tooth. The trial court granted both motions and signed separate orders of dismissal, dismissing Cooney's claims.[3]

Cooney appealed. After perfecting his appeal, Cooney moved to dismiss his appeal as to Dr. Kreit. We granted the motion, so Dr. Kreit is no longer a party to the appeal.[4] Later, Cooney filed a brief complaining about the trial court's dismissal of his claims against Dr. Abdel-Rahman. Cooney argues Dr. Piazza's amended report complies with the expert-report requirements of the TMLA as it relates to the treatment he received from Dr. Abdel-Rahman.

We conclude Dr. Piazza's amended report is adequate to comply with the TMLA. It describes the standard of dental care that applies to Dr. Abdel-Rahman's treatment, how Dr. Abdel-Rahman allegedly violated that standard, and it traces a

---

[3]The trial court's orders note that as to Dr. Abdel-Rahman, the amended expert report "fails to meet the requirements outlined in Tex. Civ. Prac. & Rem. Code, § 74.351(a), 74.351(*l*), and § 74.351(r)(6)." The trial court signed a separate order on Dr. Kreit's motion to dismiss, but the order dismissing the case against Dr. Kreit did not specify the sections of the TMLA the trial court relied on to find the amended report deficient. Cooney, however, asked the trial court to provide the parties with written findings of fact and conclusions of law. The trial court filed written findings as to both of its orders, which reflect the trial court found the amended report failed to implicate the conduct of either Dr. Kreit or Dr. Abdel-Rahman because it contains "conclusory opinions and defective opinions on the applicable standards of care" and how the respective dentist's alleged departures from those standards caused Cooney's injury.

[4]*See Cooney v. Kreit¸* No. 09-19-00336-CV, 2020 WL 6164326 (Tex. App.—Beaumont Oct. 22, 2020, no pet. hist.) (dismissing Cooney's case against Dr. Kreit based on Cooney's motion to dismiss).

clear chain of causation between Dr. Abdel-Rahman's alleged negligence and Cooney's injury when he inhaled a crown that fell from his tooth.

We hold the trial court erred in finding Dr. Piazza's amended report inadequate. We reverse the trial court's order dismissing Cooney's suit and remand the case to the trial court for further proceedings, as needed, to resolve his claims against Dr. Abdel-Rahman.

Background

This case arises from complications in a procedure at a dental office in Polk County in August 2016. During the procedure, Cooney had several of his teeth pulled, and when the dentist pulled one of Cooney's teeth, he inhaled a gold crown. The dentist who performed the procedure knew that Cooney had swallowed or inhaled the crown that fell from tooth #18 while it was being removed. Later that evening, Cooney went to an emergency room where he was given a chest x-ray to evaluate why he was having trouble breathing. The x-ray revealed an object in Cooney's lungs. Cooney was admitted to the hospital. The next day, a physician removed a gold crown from Cooney's upper lung.

More than two years later, Cooney sued Dr. Kreit and Dr. Abdel-Rahman. In Cooney's petition, he alleged the dentists who treated him were negligent and injured him while he was under their care. Cooney's petition also alleged he was possibly treated by someone named "Dr. Rock." Specifically, the petition alleges:

"Dr. Rock is an alias by one of the named defendants or a third person who was represented to be a dentist."

After Cooney appealed, he dismissed his appeal he filed to challenge the dismissal of the claims he filed against Dr. Kreit. Thus, the remaining issue is whether Dr. Piazza's report is adequate under the TMLA based on what it conveys about the treatment Cooney received from Dr. Abdel-Rahman.

Dr. Abdel-Rahman objected to Cooney's amended report, arguing the amended report "fail[ed] to implicate any conduct of Dr. Abdel-Rahman." Specifically, Cooney claimed the amended report failed to identify him as the person who pulled Cooney's teeth when looking to the information that Dr. Piazza included in the four corners of his amended report. Dr. Abdel-Rahman's argument is premised on the fact that the amended report includes the names of at least two dentists and possibly a third who the report suggests were involved in pulling Cooney's teeth. Given the language in Dr. Piazza's amended report, Dr. Abdel-Rahman argued the report left it up to conjecture to guess about whether Dr. Abdel-Rahman or someone else Cooney claimed was responsible for pulling the tooth that was capped with the crown that ended up being lodged in Cooney's lung. In addition, Dr. Abdel-Rahman claimed the amended report fails to explain the standard of care applicable to the dentist who pulled the tooth, to explain how Dr. Abdel-Rahman breached that standard, or to link Dr. Abdel-Rahman's negligence to causing Cooney's injury.

5

The trial court granted Dr. Abdel-Rahman's motion and found Dr. Piazza's amended report inadequate under the TMLA. Cooney seeks to overturn that order in the appeal.

Standard of Review

We review a ruling dismissing a medical liability claim for abuse of discretion.[5] Under Texas law, trial courts abuse their discretion if they act "in an arbitrary or unreasonable manner without reference to any guiding rules or principles."[6] Trial courts may also abuse their discretion when ruling on a motion if they fail to analyze or correctly apply the law.[7]

Under the TMLA, the claimant must provide the medical provider against whom he files a claim an expert report, that is a report that provides a "fair summary" of the expert's opinion as of the date of the report.[8] To comply with the TMLA, the report the claimant files "must discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit."[9] But if the report is conclusory about the applicable standard of care, breach, and causation that applies to the defendant the claimant has sued, the

---

[5]*Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001).
[6]*Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002).
[7]*Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).
[8]Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6).
[9]*Palacios*, 46 S.W.3d at 875.

6

report "does not fulfill these two purposes."[10] To constitute a compliant report, "the expert must explain the basis of his statements to link his conclusions to the facts."[11] And the courts may not fill in the gaps in such reports by relying on no more than inferences.[12]

We look to the four corners of the report in deciding whether a report filed by a claimant complies with the TMLA.[13] As to causation, a compliant report must demonstrate causation beyond mere conjecture.[14] To establish causation under the TMLA, the report must explain how the defendant's allegedly negligent act or omission was a substantial factor in bringing about the claimant's harm and that, without the defendant's act or omission, the harm would not have occurred.[15]

## Analysis

### *Qualifications*

In the trial court and in the brief Dr. Abdel-Rahman filed in response to Cooney's appeal, Dr. Abdel-Rahman argues Dr. Piazza's amended report fails to demonstrate that Dr. Piazza is qualified "to opine on standard of care or breach of

---

[10]*Id.* at 879.
[11]*Wright*, 79 S.W.3d at 52 (quoting *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999) (cleaned up)).
[12]*Collini v. Pustejovsky*, 280 S.W.3d 456, 462 (Tex. App.—Fort Worth 2009, no pet.).
[13]*Wright*, 79 S.W.3d at 52.
[14]*Id.* at 53.
[15]*Costello v. Christus Santa Rosa Health Care Corp.*, 141 S.W.3d 245, 249 (Tex. App.—San Antonio 2004, no pet.).

that standard[.]" The trial court rejected that argument even though it found Dr. Piazza's report deficient for other reasons. The trial court did so based on the information Dr. Piazza included in his report, which describes his experience as a dentist, that he recently retired from his active practice, and that he is now teaching in a university setting at a school of dentistry. Still, we will address Dr. Abdel-Rahman's argument because it would offer an alternative to the resolution we have otherwise reached on the arguments of consequence that the parties have presented in the appeal.

Dr. Abdel-Rahman argues that Dr. Piazza was not qualified to provide Cooney with a compliant report under the TMLA because his amended report reflects he retired from the active practice of dentistry in September 2015. According to Dr. Abdel-Rahman, that was "nearly one year before the treatment in question occurred."

Dr. Abdel-Rahman cites no caselaw to support his argument. Of course, we acknowledge the TMLA states an expert qualifies to express a medical opinion under the Act if the expert "is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant[.]"[16] Dr. Piazza's report shows he is not currently engaged in the active practice of dentistry but is knowledgeable about the standards applicable to the practice of dentistry as related

---

[16]Tex. Civ. Prac. & Rem. Code Ann. § 74.402(b)(1).

to pulling a patient's teeth. It also reflects Dr. Piazza practiced general dentistry for thirty-five years before retiring. Since then, Dr. Piazza's report reflects he has been teaching at the University of Texas School of Dentistry.

Clearly, Dr. Piazza fails to meet the active practice requirement standard in the TMLA. Even so, the TMLA allows trial courts to depart from that standard upon determining the expert is qualified as an expert and "there is good reason to admit the expert's testimony."[17] The good reason in this case is Dr. Piazza's experience as a dentist and as a teacher.

The trial court rejected Dr. Abdel-Rahman's lack-of-qualifications argument. The trail court found Dr. Piazza has "expertise in extracting teeth, the very kind of dental care in question in this case." We note that under the TMLA, the term *practicing health care* is not exclusively confined to those actively practicing in their fields, as *practicing health care* is defined to include "training health care providers in the same field as the defendant health care provider at an accredited education institution[.]"[18] Dr. Abdel-Rahman never argued to the trial court (and he does not argue here) that Dr. Piazza is not teaching at an accredited educational institution as a teacher training dentists.

Given the definition in the TMLA for the term *practicing health care*, we conclude the trial court did not abuse it discretion by finding Dr. Piazza was qualified

---

[17]*Id*. § 74.402(d).
[18]*Id*. § 74.402(a)(1).

to write a report about whether Dr. Abdel-Rahman was negligent, what standard of care applied to Cooney's treatment, and to explain how Dr. Abdel-Rahman violated that standard and caused the injury at issue in Cooney's suit.

*Identity of the Treating Dentist*

Next, we turn to Cooney's arguments complaining about the trial court's finding that the amended report fails to adequately identify Dr. Abdel-Rahman as the treating dentist. According to Dr. Abdel-Rahman, Dr. Piazza's amended report never identified him as the dentist who removed Cooney's teeth. Dr. Abdel-Rahman suggests the amended report fails to clearly identify whether he or "Dr. Rock" pulled the tooth that was capped by the gold crown that then became lodged in Cooney's lung.

We recognize, of course, that Dr. Piazza's report could have been clearer by identifying Dr. Abdel-Rahman as the dentist who pulled the tooth. Even so, Dr. Piazza was not an eyewitness to the procedure. And the language in the amended report points to Dr. Abdel-Rahman as the dentist responsible for pulling that tooth. Stated another way, Dr. Piazza's report implicates Dr. Abdel-Rahman as the dentist who pulled the tooth capped with a gold crown. Specifically, the amended report states:

> On August 3, 2016, Mr. Cooney signed a form acknowledging that he was choosing to have 21 teeth extracted instead of some being restored. The printed doctor's name on this form is Nader Kre[i]t, but the signature looked like Dr. Sammy Krait. There is no record of advising Mr. Cooney to keep any teeth. There is a record of Dr. Firas Rahman

10

extracting #31, #18, and #6 through #11 (not clear) and that Mr. Cooney aspirated the gold crown on #18. He was informed to seek medical attention with a chest x-ray. On this visit, Mr. Cooney had local anesthesia on both sides of his mandible which renders sensory perception of the tongue nill, and which reduces his gag reflex as well. On August 4, 2016, Angel Witt called the patient and discovered that Mr. Cooney had been to the emergency room the night before after having difficulty breathing. A chest X-ray revealed that a gold crown was in his lungs. He was admitted and surgery was performed to remove the crown. On another note that was written by Dr. Abdul-Rahman on August 4, 2016, Mr. Cooney was home that evening and doing fine.

The above paragraph implicates Dr. Abdel-Rahman because it identifies him based on a medical record as the treating dentist. Thus, the amended report implicates Dr. Abdel-Rahman as the treating dentist who pulled the tooth based on the information found in the report's four corners.

*Standard of Care, Breach, and Causation*

Besides finding the amended report failed to implicate Dr. Abdel-Rahman, the trial court found the report failed to identify the applicable standard of care, how Dr. Abdel-Rahman breached it, and how Dr. Abdel-Rahman's departure from the standard of care caused Cooney's injury. The purpose of the expert-report "requirement is to weed out frivolous malpractice claims in the early stages of litigation, not to dispose of potentially meritorious claims."[19] Under the TMLA, a complaint report "provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care

---

[19]*Abshire v. Christus Health. Se. Tex*., 563 S.W.3d 219, 223 (Tex. 2018).

rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed."[20] The report need only demonstrate a good-faith effort to comply with the statutory requirements.[21]

We disagree with the trial court that the report is inadequate as to the applicable standard of care, causation, and breach. The amended report states the "[s]tandard of care dictates that you protect the airway (throat) with a device such as a gauze throat shield, a Mr. Thirsty (which suctions and protects the airway), . . . [but] [t]here is no record of this being done on August 3, 2016[,] for Mr. Cooney." That explanation set out the standard of care and is not unclear. Dr. Piazza's amended report concludes: "The failure to use a protective airway device in an elderly patient with this broad area of local anesthetic coverage was negligent . . . [because] [a] reasonable and prudent dentist would have taken such precautions." So how Dr. Abdel-Rahman breached the standard is clear in the report, Dr. Piazza is claiming he failed to protect Cooney's airway in the procedure that involved the tooth that was capped with the crown.

To explain causation, Dr. Piazza's amended report states:

The patient was elderly and anesthetized on both side of the mandible as well as his palate. This would render his swallowing (protective) reflex to be greatly reduced. He would have lost sensory ability as well.

---

[20] Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6).
[21] *See Abshire*, 563 S.W.3d at 223; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(*l*).

12

When he was in a semi-reclined position while undergoing the extractions, it would enhance the possibility of an object entering the airway. [Dr. Rahman's failure to use a protective airway device] was the direct cause of Mr. Cooney swallowing the crown and the subsequent lung surgery to retrieve it. Dropping of an object into the throat is a foreseeable risk and that is why a reasonable and prudent dentist would take precautions.

The amended report concludes the failure to protect Cooney's airway during the procedure to remove his teeth "was the direct cause of Mr. Cooney swallowing the crown and the subsequent lung surgery to retrieve it." Nothing is unclear about how Dr. Abdel-Rahman's alleged violation of the standard of care resulted in Cooney's injury.

In our view, the trial court abused its discretion when it found the amended report non-complaint with the TMLA.[22] The report draws a line directly from Dr. Abdel-Rahman's treatment, explains what standard of care applies to dentists when extracting a patient's teeth, implicates Dr. Abdel-Rahman as the treating dentist, and explains how his departure from the standard resulted in Cooney's injury when he inhaled a gold crown. The amended report implicates Dr. Abdel-Rahman as the treating dentist since it identifies him as the dentist who, according to the medical records of the dental office where the procedure occurred is the dentist who pulled the tooth that was capped with a crown.[23]

---

[22]*See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6).
[23]*See Abshire*, 563 S.W.3d at 224.

13

Since Dr. Piazza's amended report complies with the TMLA on at least one of Cooney's liability theories, the trial court had to allow Cooney to proceed with the suit.[24] We hold the trial court abused its discretion when it granted Dr. Abdel-Rahman's motion to dismiss.

Conclusion

We sustain Cooney's issue. For the reasons explained above, we reverse the order dismissing the claims Cooney filed against Dr. Abdel-Rahman and remand the case to the trial court to allow Cooney to proceed against Dr. Abdel-Rahman in the suit.

REVERSED AND REMANDED.

_____
HOLLIS HORTON
Justice


Submitted on September 1, 2021
Opinion Delivered November 4, 2021

Before Golemon, C.J., Kreger and Horton, JJ.

---

[24]*See Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 630 (Tex. 2013).